# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| STACEY SHOOP, | : | Case No. 3:17-cv-258 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ENTRY

## I.     Introduction

Plaintiff Stacey Shoop applied for Supplemental Security Income on April 15, 2014, asserting she could no longer work due to her mental impairments and hepatitis C. Her application was denied initially and upon reconsideration. Plaintiff requested a hearing, after which Administrative Law Judge (ALJ) Elizabeth A Motta concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

Plaintiff brings this case challenging the Social Security Administration's denial of her application for Supplemental Security Income. She seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Motta's non-disability decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #11), the

Commissioner's Memorandum in Opposition (Doc. #15), Plaintiff's Reply (Doc. #16), and the administrative records (Doc. #s 6, 10).

## II.    Background

In April 2014, when Plaintiff filed her application for benefits, she was forty-three years old and was therefore considered a "younger person" under Social Security Regulations.  *See* 20 C.F.R. § 416.963(c).  She has a high school education.  *See id.* § 416.964(b)(4).

### A.    Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Motta she is unable to work because of her anxiety.  (Doc. #10, *PageID* #793).  When she is anxious, she feels "uncomfortable in [her] skin … and shaky a little bit."  *Id.* at 805.  She also has manic bipolar disorder.  *Id.* at 797.

Plaintiff has trouble concentrating.  *Id.* at 803.  She explained, "my mind goes pretty quick and then I crash, and I have to sleep … for a few hours.  I get started on things and then I can't finish them."  *Id.* at 793.  She takes medication and it helps her some.  *Id.*  She testified that she "can't not be on medication."  *Id.* at 797.  However, her psychiatrist left and his replacement took her off one her medications.  *Id.* at 794.  She does not think her new doctor is good for her and hopes to find a new psychiatrist.  *Id.* at 794-95.

Plaintiff acknowledged her history of substance abuse.  *Id.* at 798.  She has been incarcerated seven times—all related to drugs.  *Id.* at 793.  To her credit, at the time of the hearing, she had not used drugs, alcohol, or cigarettes for four years and three

months.  *Id.* at 798.

When asked if she looked for work after her most recent release from prison, Plaintiff testified that she did at first but not recently because "[n]ot a whole lot of people like my [criminal] record."  *Id.* at 799.  Since her release, "my main goal is to stay off drugs … and get my mental health in order."  *Id.* at 800.

Plaintiff lives with her fourteen-year-old son and his godfather.  *Id.* at 790.  She is able to prepare simple meals and do laundry.  *Id.* at 799, 805.  She drives about every other day.  *Id.* at 790-91.  However, she does not like to drive long distances or at night.  *Id.* at 804.  She has no problems going to the store or shopping.  *Id.* at 799.  She attends Narcotics Anonymous meetings approximately three times per week and regularly attends church.  *Id.* at 801-02.  She does not have a lot of friends.  *Id.* at 800.

**B.**    **Medical Opinions**

*i.*    *Darke County Mental Health Providers*

In June 2014, Plaintiff's treating therapist, Dianna E. Burgess, MS, PC, opined in a letter to Job & Family Services that Plaintiff was unable to work "due to the nature of her symptoms and demonstrates the need to continue working to stabilize and regain her typical functioning in the community."  (Doc. #6, *PageID* #601).

A few months later, in October 2014, Irfan Dahar, M.D.—Plaintiff's treating psychiatrist—and Ms. Burgess completed a Mental Impairment Questionnaire.  *Id.* at 628-31.  Dr. Dahar diagnosed Bipolar I Disorder, Anxiety Disorder Not Otherwise Specified (NOS), Polysubstance Dependence, and Personality Disorder NOS.  *Id.* at 628. He opined that Plaintiff is markedly impaired in numerous areas of work-related mental

functioning, including, for example, her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; and work in coordination with others without being distracted by them. *Id.* at 630-31. Further, she would likely be absent from work more than three times a month due to her impairments and treatment. *Id.* at 630.

In May 2015, Ms. Burgess opined that Plaintiff "suffers with moderate to severe mood episodes and distress situations with her anxiety." *Id.* at 731. Further, she struggles with focus and has difficulty maintaining consistency in daily routines, schedules, and tasks. *Id.* She has "[m]oderate to severe difficulty" being around others because of social discomfort and the presence of mental health symptoms. *Id.*

In September 2015, Phillip A. Hash, D.O., who also provided medication management to Plaintiff, and Ms. Burgess completed a Mental Impairment Questionnaire. *Id.* at 733-37. He noted that Plaintiff "experiences frequent mental and physical agitations, mood changes/variations, irritability, depression, and anxiety." *Id.* at 735. Further, she "is fairly motivated for treatment and appears to be very responsive to medication management/psychiatric services and individual treatment." *Id.* He opined that she has marked deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. *Id.* at 736. She would likely miss work at least three times per month because of her impairments or treatment. *Id.*

In December 2015, Ms. Burgess opined that Plaintiff was "substantially affected" in all areas of work-related mental functioning. *Id.* at 739-40. She explained that Plaintiff has a "history of chronic and pervasive mental health symptoms and issues,

which continuously impact her in her daily functioning and limit her in her abilities. *Id.*

In March 2016, Ms. Burgess described the "wide spectrum" of Plaintiff's mood swings: "At times, she has presented as 'low' in her mood with overt depressive symptoms, sadness, and feelings of being overwhelmed by life and all of its responsibilities. At other times, she has presented as very 'high,' exhibiting strong traits of mania, with rapid and pressured speech, a tangential thought process, and seemingly impulsive thoughts, words, and actions." *Id.* at 777. Plaintiff "has worked diligently to maintain her treatment with individual therapy, psychiatric services, and medication management." *Id.* Although she tries to "maintain her typical life responsibilities and tasks" (she keeps a planner and makes herself reminders of what she needs to do), she struggles and "still often falls short in being able to do these things as efficiently and effectively as needed." *Id.* at 777-78. Ms. Burgess concluded, "Ms. Shoop is deserving of support and would greatly benefit from any additional support that she is provided with in her life. She clearly exhibits the motivation and drive of someone wanting to receive and utilize appropriate help and puts forth great effort to be a healthy person. For all of her efforts, it appears that she continues to struggle in her life due to her mental health symptoms and issues." *Id.* at 778.

### ii. *Vicki Warren, Ph.D./Mary K. Hill, Ph.D.*

On July 9, 2014, Dr. Warren reviewed Plaintiff's record on behalf of the state agency. *Id.* at 116-26. She found that Plaintiff had two non-severe impairments—"Other and Unspecified Arthropathies" and Personality Disorder—and two severe impairments—Affective Disorder and Anxiety Disorder. *Id.* at 120. She opined that

Plaintiff had mild restrictions in her activities of daily living; moderate difficulties in social functioning; moderate limitations in concentration, persistence and pace; and no episodes of decompensation of extended duration. *Id.* at 121. Dr. Warren adopted the Mental Residual Functional Capacity assessment from the July 21, 2011 administrative decision under *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir.1997) and Acquiescence Ruling 98-4(6). *Id.* at 124.

Dr. Hill reviewed Plaintiff's record on December 29, 2014, and did not adopt the prior assessment. *Id.* at 133. Dr. Hill noted that Plaintiff's psychological symptoms will limit her concentration, persistence, and pace and her ability to tolerate normal work pressure. *Id.* at 137. She is limited to performing one-to-four-step tasks with no more than moderate pace or production quotas in a static environment where changes are explained and gradually introduced. *Id.* at 137-38. Dr. Hill, observing that Plaintiff has problems with irritability and was diagnosed with a personality disorder, opined that her interactions with others need to be on a superficial level with no conflict resolution or persuading others. *Id.* at 137.

## III.     **Standard of Review**

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful

activity," in Social Security lexicon.  42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007).  Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"  *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …."  *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47

(6th Cir. 2004)).

## IV.    <u>The ALJ's Decision</u>

As noted previously, it fell to ALJ Motta to evaluate the evidence connected to

Plaintiff's application for benefits. She did so by considering each of the five sequential

steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. She reached

the following main conclusions:

Step 1:    Plaintiff has not engaged in substantial gainful employment since April 15, 2014.

Step 2:    She has the severe impairments of mood disorder, anxiety disorder, personality disorder, and polysubstance abuse in reported remission.

Step 3:    She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "less than the full range of medium work … lift and carry up to 50 pounds occasionally and 25 pounds frequently; no climbing ladders, ropes, or scaffolds; no exposure to hazards, such as dangerous machinery, driving as part of job duties, or working at unprotected heights; no complex or detailed instructions; simple, repetitive tasks; low stress with no strict production quotas or fast pace and only routine work with few changes in the work setting; no contact with the public as part of job duties; and occasional contact with coworkers and supervisors, including no teamwork and no conflict resolution or persuading others."

Step 4:    She has no past relevant work.

Step 5:    She could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 39-53).  These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability.  *Id.* at 53.

## V.   <u>Discussion</u>

Plaintiff contends that the ALJ failed to properly evaluate the medical opinions of record.  Further, she argues that the ALJ erred in identifying her daily activities as an adverse disability factor.

The Commissioner maintains that substantial evidence supports both the ALJ's evaluation of the medical opinions and her assessment of Plaintiff's daily activities.

### A.   **Medical Opinions**

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions.  "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule."  *Rogers,* 486 F.3d at 242 (citations omitted).  The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and

consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

ALJ Motta found that "the opinions of Drs. Dahar and Hash are not entitled to controlling or deferential weight" and, instead, assigned them "little weight." (Doc. #6, *PageID* #50). She provided two primary reasons for discounting their findings of marked impairment. First, she found that their opinions "are unsupported by objective signs and findings in the preponderance of the mental health records." *Id.* Second, their opinions are inconsistent with Dr. Dahar and Ms. Burgess's treatment notes that indicate Plaintiff was stable and/or functioning fairly well.

Plaintiff argues that, in reaching those conclusions, ALJ Motta improperly credited only the evidence that disfavors a finding of disability. This argument lacks merit. ALJ Motta recognized that some treatment notes showed Plaintiff was experiencing symptoms—for example, "These notes generally show some anxious and/or depressed moods and some impairment of memory[.]" *Id.* She also acknowledged similar notes earlier in her decision:

According to Dr. Dahar, the claimant exhibited an anxious and depressed mood with a labile affect.… The claimant continued to remain relatively stable with continued medication management and counseling. Subsequent notes show some anxious and/or depressed moods …. She also exhibited some impairment of memory on a few occasions …. Ms. Burgess noted that, despite situational stressors regarding her relationship with her son, the claimant appeared to be "functioning fairly well" at that time ([Doc. #6, *PageID* #713])…. Although Dr. Dahar[1] noted some manic behavior at the next visit in February 2015, the claimant said "she was told" to stop taking her Levothyroxine for an unknown reason.…

*Id.* at 46. But, the ALJ also observed Plaintiff's treatment records include a plethora of notes showing that she was stable and/or that she was functioning fairly well—for example:

The claimant continued to remain relatively stable with continued medication management and counseling. … [H]er providers documented euthymic, calm, and/or stable moods on several other occasions. She … displayed intact memory and normal attention and concentration on several other occasions. Other mental status findings remained relatively normal and included an intact fund of knowledge, normal intelligence, fair to good insight and judgment, normal hygiene, … normal speech, goal-directed and/or linear thought processes … ([Doc. #6, *PageID* #s 617-23, 691-729, 741-76]).

[Ms.] Burgess … noted that the claimant appeared to be "making progress and maintaining her stability well" ([*Id.* at 711]). Later that month, Ms. Burgess noted that … the claimant appeared to be "functioning fairly well" at that time ([*Id.* at 713]). In December 2014, the claimant told Dr. Dahar that she was in a stable condition, and Dr. Dahar documented a bright and calm mood and affect ([*Id.* at 697]). Ms. Burgess also noted in December 2014 that the claimant appeared to be "stable and functioning fairly well" ([*Id.* at 722])…. Further,

---

[1] Plaintiff did not see Dr. Dahar in February 2015. The notes identified by ALJ Motta correspond to treatment notes from Marc Marchioli, PA-C. (Doc. #6, *PageID* #s 703-05).

the claimant's counselor again indicated in February 2015 that the claimant appeared to be "fairly stable and functional" at that time ([*Id.* at 728]). In November 2015, the claimant reported an increase of focus with an increase in Concerta ([*Id.* at 758]).

(Doc. #6, *PageID* #46). The ALJ recognized evidence that supported Plaintiff's allegations and evidence that disfavored a finding a disability. Importantly, ALJ Motta did not find that Plaintiff's impairments caused no limitations. Rather, she found that Plaintiff was not as limited as opined by Dr. Dahar and Dr. Hash. This is reflected in her RFC assessment: "no complex or detailed instructions; simple, repetitive tasks; low stress with no strict production quotas or fast pace and only routine work with few changes in the work setting; no contact with the public as part of job duties; and occasional contact with coworkers and supervisors, including no teamwork and no conflict resolution or persuading others." *Id.* at 44, 50. And, "because the ALJ's opinion was supported by substantial evidence, it must be upheld, despite conflicting evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4)).

In addition, Plaintiff argues that the ALJ—who is not a medical expert—improperly substituted her opinion for that of Dr. Dahar's. (Doc. #11, *PageID* #823). This argument lacks merit; ALJ Motta did not did not "play doctor." *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) ("[A]n ALJ 'may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.'") (quoting *Meece v.*

*Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006); (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings")). She considered—as the Regulations require—whether Dr. Dahar's opinion is not inconsistent with the other substantial evidence in the case record and whether his opinion was consistent with the record as a whole. 20 C.F.R. § 416.927(c)(2), (4); ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). And, she reasonably concluded that their opinions were inconsistent with Dr. Dahar and Ms. Burgess's treatment notes.

ALJ Motta found that their opinion that Plaintiff would likely miss more than three days of work per month due to her impairments and treatment is "speculative and unsupported." (Doc. #6, *PageID* #50). According to the ALJ, "The record shows no significant periods of work activity, even with some presumed periods of sobriety, so any such opinion on the claimant's absenteeism is speculative and unsupported." *Id.* Plaintiff takes issue with the ALJ's reasoning because it "would prevent any opined [] mental health limitation from being credited in the absence of work activity …." (Doc. #11, *PageID* #822).

Plaintiff is correct that her lack of "significant periods of work activity" does not necessarily render Dr. Dahar and Dr. Hash's opinion speculative and unsupported. A physician's opinion is not speculative merely because the doctor sets forth what is *likely*

to happen in the future—indeed, that is what is expected from medical professionals.[2]

However, to the extent that the ALJ erred, it is harmless error because substantial evidence supports ALJ Motta's conclusion that Dr. Dahar and Dr. Hash's opinion that Plaintiff would be absent more than three times is unsupported. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").

Plaintiff disagrees, asserting that the medical records show she had difficulty maintaining attendance at her mental health appointments. (Doc. #11, *PageID* #822) (citing Doc. #6, *PageID* #s 580-87, 635, 777-78). But, the records Plaintiff cites do not support her argument. There are three transfer/discharge summaries in Plaintiff's treatment notes (dated January 2, 2012, July 23, 2012, and October 28, 2014). The first two indicate that the provider's last contact with Plaintiff occurred on August 5, 2011. The third indicates that the provider's last contact occurred on April 25, 2014. Plaintiff did not merely fail to show up for her next appointment.

According to Plaintiff's records from the Ohio Department of Rehabilitation and Correction, Plaintiff was incarcerated (in the Montgomery County jail) on November 13, 2011. (Doc. #6, *PageID* #s 391, 636). She was then transferred to a prison on February

---

[2] The definition of medical opinions under the Regulations includes "statements from physicians … that reflect *judgments* about the nature and severity of [an individual's] impairment(s), including [her] … *prognosis*, what [she] can still do despite impairment(s), and [her] physical or mental restrictions."[2] 20 C.F.R. § 416.927(a)(2) (emphasis added). Prognosis is defined as "the prospect of recovery as anticipated from the usual course of disease or peculiarities of the case." Merriam-Webster.com/dictionary/prognosis (last updated May 2, 2019).

10, 2012. *Id.* at 391. She was released from prison on March 3, 2014. *Id.* at 375, 477. Thus, it is reasonable to assume that Plaintiff did not attend treatment because she was incarcerated. Turning to the last transfer/discharge summary, in April 2014, Plaintiff sought treatment at New Creation Counseling, where she had received treatment in the past. *Id.* at 636. On October 28, 2014, her provider discharged her, indicating that her admission date was April 4, 2014 and her last contact was April 25, 2014. *Id.* at 635. But, this does not show her inability to attend appointments; Plaintiff had already begun treatment with Dr. Dahar on April 16, 2014 and with Ms. Burgess on May 1, 2014. *Id.* at 684, 710. This evidence does not support Dr. Dahar and Dr. Hash's opinion that Plaintiff would be absent from work three or more times per month.

ALJ Motta's provided one other reason: "Drs. Dahar and Hash relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff] and seemed to uncritically accept as true most, if not all, of what [she] reported. Yet, … good reasons exist for questioning the reliability of [Plaintiff's] subjective complaints." (Doc. #6, *PageID* #50). Plaintiff contends that ALJ Motta disregards the nature of her mental health issues.

It can be considerably more difficult to substantiate psychiatric impairments by objective testing:

> [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the

diagnostic techniques.

*Blankenship v. Bowen,* 874 F.2d 1116, 1121 (6th Cir. 1989) (citing *Poulin v. Bowen,* 817 F.2d 865, 873-74 (D.C. Cir. 1987), quoting *Lebus v. Harris,* F.Supp. 56, 60 (N.D. Cal. 1981)).  In the present case, ALJ Motta reasonably questioned their diagnostic techniques—specifically, the questionable reliability of Plaintiff's statements given her possible drug-seeking behavior.

Plaintiff contends, "It is a logical fallacy to assume that a treating physician relied quite heavily upon subjective reports where a treatment relationship has afforded the physician a longitudinal perspective."  (Doc. #11, *PageID* 824).  However, Dr. Dahar had only seen Plaintiff two times in 2011 and two times in 2014 (almost six months apart) when he provided his opinion.  (Doc.#6, *PageID* #s 571, 588, 684, 691).  Although he had access to notes from Plaintiff's counselor and she also signed the opinion, his treatment relationship with Plaintiff was random, at best.  *See* 20 C.F.R. § 416.927(c)(2)(ii) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

In conclusion, ALJ Motta provided good reasons for the weight she assigned Dr. Dahar's and Dr. Hash's opinions, and substantial evidence in the record supports those reasons.  Accordingly, Plaintiff's challenges to the ALJ's assessment of their opinions lack merit.

ALJ Motta also assigned the opinions of Plaintiff's therapist, Ms. Burgess, "little weight."  (Doc.#6, *PageID* #51).  She correctly observed that as a therapist, Ms. Burgess

in not an "acceptable medical source" under 20 C.F.R. § 416.913. Instead, she falls

under the category of "other sources." 20 C.F.R. § 416.913(d). "Although there is a

distinction between what an adjudicator must consider and what the adjudicator must

explain in the disability … decision, the adjudicator generally should explain the weight

given to opinions from these 'other sources' …." Soc. Sec. R. 06-03p, 2006 WL

2329939, at *6 (Aug. 9, 2006).[3] The same factors that are used to evaluate opinions from

acceptable medical sources can be applied to opinions from other sources. *Id.* at *4-5

ALJ Motta did provide reasons for assigning Ms. Burgess's opinions little weight.

For the most part, the ALJ's reasons for rejecting Dr. Dahar's opinions are the same as

her reasons for discounting Ms. Burgess's opinion. First, she found Ms. Burgess's

opinions were "unsupported by objective signs and findings in the preponderance of the

record." (Doc.#6, *PageID* #51). Second, she observed that Ms. Burgess's opinions are

"inconsistent with her own statements on several occasions that the claimant was 'making

progress,' 'functioning fairly well,' or 'maintaining her stability well[.]'" *Id.* at 51

(citations omitted). For the same reasons explained above, substantial evidence supports

the ALJ's reasons.

Additionally, ALJ Motta discounted her opinion because, "Ms. Burgess did not

offer any specific functional limitations in her assessments …." (Doc.#6, *PageID* #51).

Plaintiff strongly disagrees, "This is a bizzare criticism which appears to neglect that

---

[3] The Social Security Administration rescinded SSR 06-03p, effective March 27, 2017. *See* Federal Register Notice Vol. 82, No. 57, page 15263. At the time of ALJ Motta's decision, SSR 06-03p was still in effect.

Therapist Burgess not only responded to interrogatories … but also cosigned forms completed with Drs. Dahar and Hash.  (Doc.#11, *PageID* #824).

Overall, Ms. Burgess's opinions are relatively vague.  For example, in June 2014, she opined that Plaintiff was unable to work "due to the nature of her symptoms and demonstrates the need to continue working to stabilize and regain her typical functioning in the community."  (Doc. #6, *PageID* #601).  In comparison, Mary K. Hill, Ph.D., explained, "[plaintiff's] psych [symptoms] will limit [concentration/persistence/pace] and her ability to tolerate normal work pressures.  [She is] able to perform 1-4 step tasks [with] no more than moderate pace or production quotas."  *Id.* at 137.

Plaintiff is correct that she co-signed the opinions with the doctors.  But, regardless of whether they include specific functional limitations, ALJ Motta assigned little weight to those opinions and (for the reasons explained above) substantial evidence supports her conclusion.

In comparison, ALJ Motta assigned significant weight to the opinions of state agency reviewing psychologists, Dr. Warren and Dr. Hill.  She gave greater weight to Dr. Hill's (more recent) opinion, concluding it was supported by objective signs and findings in the record, including the records submitted after her assessment.  *Id.* at 49; *see* 20 C.F.R. § 416.927(c)(3).  Indeed, ALJ Motta "essentially adopted" the limitations opined by Dr. Hill.[4]  Plaintiff contends that ALJ Motta did not adequately explain her reasons for

---

[4] As described above, Dr. Hill opined Plaintiff is "able to perform 1–4 step tasks [with] no more than moderate pace or production quotas."  (Doc. #6, *PageID* #137).  Her "[i]nteractions [with] others need to be on a superficial level.  No conflict resolution or persuading others."  *Id.*  She is "able to work in a static environment where change is explained and gradually introduced."  *Id.* at 138.

giving Dr. Hill significant weight and failed to apply the same scrutiny, let alone greater scrutiny, to Dr. Hill's opinion that she did to Plaintiff's treating physicians. Plaintiff's arguments lack merit.

ALJ Motta reasonably relied on the opinions of the record-reviewing psychologists. *See* 20 C.F.R. § 416.927(e)(2)(i); Soc. Sec. R. 96-6p, 1996 WL 374180, *2 (July 2, 1996)[5] ("State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."). Because ALJ Motta "essentially adopted" Dr. Hill's opinion, the objective evidence the ALJ Motta identifies in support of her RFC assessment is the same evidence that supports Dr. Hill's opinion. For instance, the ALJ observed that Plaintiff remained relatively stable with continued medication management and counseling. (Doc. #6, *PageID* #46).

Further, ALJ Motta adjusted her RFC assessment based on the evidence obtained after Dr. Hill reviewed Plaintiff's record. To account for Plaintiff's mood disorder and potential drug-seeking behavior, ALJ Motta limited Plaintiff to simple, repetitive tasks. *Id.* at 49. Further, ALJ Motta did not adopt Dr. Hill's limitation to "superficial interactions" because it is not defined in the Regulations and, instead, limited Plaintiff to no public contact and occasional contact with coworkers and supervisors, including no teamwork. *Id.*

In sum, the medical evidence of record paints a less restrictive picture of

---

[5] The Social Security Administration rescinded SSR 96-6p and replaced it with SSR 17-2p, 2017 WL 3928306, effective March 27, 2017. At the time of ALJ Motta's decision, SSR 96-6p was still in effect.

Plaintiff's mental functional abilities than does Dr. Dahar's and Ms. Burgess's opinions. ALJ Motta provided the requisite "good reasons" for discounting the opinions and she appropriately weighed and discounted the opinions in accordance with the law.

## B.    Daily Activities

Plaintiff contends that ALJ Motta improperly identified her daily activities as an adverse disability factor.  (Doc. #11, *PageID* #827).

The Social Security Administration uses a two-step process for evaluating an individual's symptoms.  First, the ALJ determines whether an individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms.  Soc. Sec. R. 16-3p, 2016 WL 1119029, *3 (March 16, 2016).[6] Second, the ALJ evaluates the intensity and persistence of the individual's symptoms and determines the extent to which the individual's symptoms limit her ability to perform work-related activities.  *Id.* at *4.  To do this, the ALJ must examine the entire case record, including the objective medical evidence; the individual's relevant statements; statements and other information provided by medical sources and others; and any other relevant evidence in the record.  *Id.* at *4.  The ALJ should also consider several factors:

1.    Daily activities;
2.    The location, duration, frequency, and intensity of pain or other symptoms;
3.    Factors that precipitate and aggravate the symptoms;
4.    The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

---

[6] Soc. Sec. R. 16-3p was republished on October 25, 2017 to clarify that the Administration's adjudicators will apply Soc. Sec. R. 16-3p when they make decisions on or after March 28, 2016.  Soc. Sec. R. 16-3p, 2017 WL 5180304 (October 25, 2017).

5.  Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6.  Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7.  Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7; *see also* 20 C.F.R. § 416.929(c)(3). The Administration stresses that it "will consider other evidence to evaluate only the factors that are relevant to assessing the intensity, persistence, and limiting effects of the individual's symptoms." *Id.* at *7. And if there is no evidence regarding one of the factors, that factor will not be discussed. *Id.*

In the present case, ALJ Motta followed these steps. First, she found Plaintiff had several severe impairments: mood disorder, anxiety disorder, personality disorder, and polysubstance abuse in reported remission. (Doc. #6, *PageID* #41). Second, she concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence of record. In support, the ALJ examined—as required—the objective medical evidence, Plaintiff's statements, and other relevant information. Further, she considered the factors, including, as is relevant here, Plaintiff's daily activities. ALJ Motta found that her description of daily activities was inconsistent with her complaints of disabling symptoms and limitations. The ALJ explained, for example, that in August 2015, Plaintiff reported that she was active in her church and also spent time with her teenage son, working out, and doing "other healthy activities" with him. *Id.* at 47 (citation omitted). Additionally, she drives every day but does not like to drive long distance or at night. *Id.* at 791, 804. She

regularly attends church, Narcotics Anonymous meetings, and does not have any trouble going to the store or shopping. *Id.*; (Doc. #10, *PageID* #799). She concluded that Plaintiff's activities "support[] a finding that [Plaintiff] remains capable of performing work involving the reduced range of medium exertion described [in the residual functional capacity assessment]." (Doc. #6, *PageID* #47).

ALJ Motta does not suggest that because Plaintiff can go shopping, she can also sustain full-time employment. Instead, the ALJ found that her activities of daily living were inconsistent with her alleged disabling symptoms and limitations. This was only one of several factors ALJ Motta considered in evaluating Plaintiff's symptoms. For instance, she also looked at Plaintiff's response to treatment. *Id.* at 45 ("She has shown a relatively good response to treatment and abstinence from substances …."). Further, the ALJ questioned whether Plaintiff's reported symptoms were for the purpose of treating psychological symptoms or for obtaining drugs to use and/or sell. *Id.* at 47. In sum, ALJ Motta reasonably evaluated Plaintiff's daily activities as set forth in the Regulations and Social Security Ruling 16-3p. Accordingly, Plaintiff's challenges to the ALJ's decision lack merit.

**IT IS THEREFORE ORDERED THAT**:

1. The ALJ's non-disability decision is affirmed; and

2. The case is terminated on the Court's docket.


Date: June 4, 2019                              *s/Sharon L. Ovington*
                                                Sharon L. Ovington
                                                United States Magistrate Judge